PEOPLE v MIHLFELD

Docket No. 113276. Submitted May 9, 1989, at Detroit. Decided May 7, 1990. Leave to appeal applied for.

Thomas Mihlfeld was convicted of negligent homicide following a bench trial in Recorder's Court of Detroit, David P. Kerwin, J. At trial there was testimony that defendant's vehicle struck the side of a vehicle which was making a left-hand turn at an intersection in Detroit, killing the passenger in that vehicle. There was further testimony that the light was green for the turning vehicle and red for defendant. A police officer who arrived at the scene shortly after the accident occurred testified that defendant had told her that he had been traveling at forty-five miles per hour through the intersection, that the light was green for him and that the other vehicle turned directly in front of him. The officer testified that she believed that the speed limit at that location was thirty or thirty-five miles per hour. Defendant did not testify. The trial court found that defendant was operating his vehicle at forty-five miles per hour, that such a speed was an immoderate rate of speed and constituted negligence and that that act of negligence caused the accident which resulted in the death of the passenger in the other vehicle. Defendant appealed.

The Court of Appeals *held:*

Driving in excess of the lawful speed limit is, by itself, insufficient to establish that a vehicle was being operated at an immoderate rate of speed within the meaning of the negligent homicide statute. Since the only evidence to support the finding that defendant was traveling at an immoderate rate of speed was his statement to the police officer that he was traveling at forty-five miles per hour and the officer's statement that the speed limit was thirty or thirty-five miles per hour, there was insufficient evidence to permit the trial court to find beyond a

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 331, 334.

What amounts to negligence within meaning of statutes penalizing negligent homicide by operation of a motor vehicle. 20 ALR3d 473.

reasonable doubt that defendant was traveling at an immoderate rate of speed.

Reversed.

CYNAR, P.J., dissented. He would hold that there was sufficient evidence to support defendant's conviction. He would affirm.

HOMICIDE — NEGLIGENT HOMICIDE — IMMODERATE RATE OF SPEED.

The phrase "immoderate rate of speed" as used in the negligent homicide statute means a speed that is not within reasonable limits; proof of the fact that the speed at which a vehicle was being driven was in excess of the rate of speed fixed by law is insufficient, by itself, to establish that the vehicle was being operated at an immoderate rate of speed (MCL 750.324; MSA 28.556).

*Frank J. Kelley,* Attorney General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Susan Randolph,* Assistant Prosecuting Attorney, for the people.

*Suzanne Carol Schuelke,* for defendant.

Before: CYNAR, P.J., and BRENNAN and MARILYN KELLY, JJ.

BRENNAN, J. Following a bench trial, defendant was convicted of negligent homicide, MCL 750.324; MSA 28.556, and was sentenced to a prison term of sixteen to twenty-four months. Defendant appeals as of right and we reverse.

Defendant's conviction was based upon the trial court's finding that defendant was operating a motor vehicle at an immoderate rate of speed at the time of the accident which claimed the life of Darrell Britton. Viewed in a light most favorable to the prosecution, the evidence was insufficient to permit a rational trier of fact to find defendant guilty of negligent homicide beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

Defendant's conviction arose out of an automobile accident which occurred on August 28, 1987, at the intersection of West Fort Street and Harbough in Detroit, Michigan. At approximately 10:00 A.M. on that date, while attempting to make a left turn from Fort Street onto Harbough, a car driven by Farrell Lee Britton was struck by an eastbound pickup truck driven by defendant. Farrell's brother, Darrell Britton, who was sitting in the front passenger seat of the car, was killed.

At trial, Farrell Britton testified that as he approached the Fort-Harbough intersection on westbound Fort Street he observed that the left turn signal arrow was green and that eastbound traffic on Fort Street was stopped at the intersection. Farrell proceeded to turn left onto Harbough and was struck by defendant's pickup. Farrell was traveling at approximately twenty-five miles per hour through the turn.

Tracey Felder testified that she was traveling behind Farrell at the time of the accident. The left turn signal arrow was green when she approached the intersection. Cars drove westbound on Fort through the intersection while she waited to turn left. The only vehicle traveling eastbound belonged to defendant.

Detroit Police Officer Allison Walker testified that she arrived at the scene shortly after the accident occurred. Defendant told her that he was traveling forty-five miles per hour through the intersection, that the light was green, and that Farrell's car turned directly in front of him. She did not know the speed limit on Fort Street at that intersection but believed it was either thirty or thirty-five miles per hour. She explained that when the left turn signal arrow for westbound traffic on Fort Street is green the traffic signal for eastbound traffic is red.

Defendant did not testify or produce any witnesses to testify on his behalf.

The trial court denied defendant's motion for a directed verdict. Defendant was found guilty as charged. The trial court stated:

> I'm convinced beyond a reasonable doubt that he is guilty as charged of negligent homicide and the People have met their burden in establishing the elements of this particular offense which are the following:
>
> That the defendant, Mr. Mihlfeld, was operating a motor vehicle on or about the date in question at Fort and Harbough, August 28th, 1987.
>
> And that he was operating this vehicle at an immoderate rate of speed of forty-five miles an hour coming through that particular intersection.
>
> Whether the light was red or green, it was an immoderate rate of speed.
>
> And that as a result of his traveling in that vehicle at that rate of speed that that constituted negligence.
>
> And that negligence is what caused the accident resulting in injuries to Darrell Britton and that those injuries, based on the autopsy as stipulated to, caused the death of Darrell Britton.

The negligent homicide statute, MCL 750.324; MSA 28.556, provides:

> Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000.00, or by both such fine and imprisonment.

Under the statute, criminal liability may be im-

posed when a death results from the operation of a vehicle: (1) at an immoderate rate of speed; or (2) in a negligent manner. As stated earlier, the trial court based defendant's conviction on his operation of a vehicle at an immoderate rate of speed.

The issue whether a defendant was operating a vehicle at an immoderate rate of speed "shall not depend upon the rate of speed fixed by law for operating such vehicle." MCL 750.326; MSA 28.558; *People v Spence,* 250 Mich 573, 576-577; 231 NW 126 (1930); *People v DeWitt,* 233 Mich 222, 225; 206 NW 562 (1925). In *People v Mc-Murchy,* 249 Mich 147, 155; 228 NW 723 (1930), the Supreme Court explained the meaning of "immoderate rate of speed" for purposes of the negligent homicide statute:

> The commonly-accepted definition of "immoderate" is: *"Not within reasonable limits."* If one drives at a rate of speed that is not reasonable, he is driving at an immoderate rate of speed and not within reasonable limits. If under those circumstances he kills a person, he is guilty of negligence. The term "immoderate speed" constitutes a form of negligence, and may result in damage to person or property. If it causes death, it is negligent homicide.

In the present case, the only evidence to support a finding that defendant was traveling at an immoderate rate of speed is his statement to Officer Walker that he was traveling forty-five miles per hour through the intersection. Although Officer Walker testified that the posted speed limit is thirty or thirty-five miles per hour, that fact is not relevant to the determination of the issue. To say that defendant's speed was immoderate because he was traveling forty-five miles per hour at the time of the accident, absent other evidence, merely begs the question.

The evidence presented at trial was insufficient as a matter of law to permit a rational trier of fact to find beyond a reasonable doubt that defendant was operating his vehicle at an immoderate rate of speed.

Reversed.

Marilyn Kelly, J., concurred.

Cynar, P.J. *(dissenting).* I most respectfully dissent from the majority's conclusion that the evidence presented at trial was insufficient as a matter of law to permit a rational trier of fact to find beyond a reasonable doubt that defendant was operating his vehicle at an immoderate rate of speed.

There is no dispute that under the negligent homicide statute criminal liability may be imposed when death results from the operation of a vehicle (1) at an immoderate rate of speed or (2) in a negligent manner.

Officer Walker, upon arriving at the scene of the accident, approached the defendant, whereupon the defendant offered, without being asked, that he had been going forty-five miles per hour through the intersection. Officer Walker testified that the speed limit was thirty or thirty-five miles per hour. Further, concerning the traffic lights at the intersection, the officer stated that the light is green at the same time for both the eastbound and westbound traffic until the green arrow for the westbound traffic comes on, at which time the eastbound traffic has the red signal.

In denying defendant's motion for a directed verdict, the court noted that defendant was both speeding and going against the red light.

In finding defendant guilty, the court found defendant was operating his vehicle at an immod-

erate rate of speed of forty-five miles per hour coming through the intersection. The court also stated that, regardless of whether the light was red or green, it was an immoderate rate of speed, constituting negligence.

I would affirm.